UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUSTIN KENNY,

    Plaintiff,

    v.

MARIA SIMON,

    Defendant.

Civil Action No. 23-772 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION AND ORDER

  Plaintiff Justin Kenny, who is proceeding *pro se*, initiated this $8 million legal malpractice suit against his former attorney, defendant Maria Simon, a lawyer at The Geller Law Group, PLLC, in the D.C. Superior Court, alleging that she "fail[ed] to act as a 'zealous' advocate" in his divorce proceedings, from December 2018 to May 2020, resulting in plaintiff's "estrangement" from his son and two daughters and "pain and suffering."  Notice of Removal, Ex. A, Complaint ("Compl.") at 2, 4, ECF No. 1-1.[1]  Defendant removed the case to this Court and moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  *See* Def.'s Mot. to Dismiss, ECF No. 5; Def.'s Mem. Supp. Mot. to Dismiss ("Def.'s Mem."), ECF No. 5-1.  For the reasons below, the motion is granted.

**I.  BACKGROUND**

  While represented by Simon, plaintiff filed, in the D.C. Superior Court in early 2019, a Complaint for Custody and/or Visitation against his now-ex-wife, who filed counterclaims for custody and related relief.  *See* Def.'s Mot. to Dismiss, Ex. A, Findings of Fact, Conclusions of Law, and Judgment of Absolute Divorce, Permanent Custody, and Permanent Child Support

---

[1]   Since paragraphs in the complaint are not consistently enumerated, references to the complaint instead reflect the pagination generated automatically by the Court's Case Management/Electronic Case Filing ("CM/ECF") system.

1

Order, *Kenny v. Knoll*, 2019 DRB 223 (D.C. Super. Ct. Apr. 28, 2020) ("Custody Order") at 1, ECF No. 5-3.  After a five-day trial in December 2019, the Superior Court issued a 55-page order that, in relevant part, awarded full physical custody of their three minor children, who had testified *ex parte* and *in camera*, to his ex-wife and granted plaintiff very limited and controlled visitation rights to take place only in a therapeutic setting and with the family therapist present. *See id.* at 41–43.

In its lengthy decision, the Superior Court made extensive findings about "the trauma that [the children] endured," "the anger and betrayal they feel from their father," and the "distressing demise of [plaintiff's] relationships with his children."  *Id.* at 9, 28.  The court observed that "one after another, the children pleaded with the Court that they not be forced to go back to therapy or family counseling with their father."  *Id.* at 9.  Plaintiff's son, for example, testified that he is "scared to death" of his father and that "[h]is father has hit him in the arm, hurt him, thrown him into a room and humiliated him."  *Id.* at 23; *see also id.* at 23 n.16 ("On rebuttal, Plaintiff admitted to many of [his son's] descriptions of physical and emotional abuse.").  His elder daughter testified that "[s]he has unhappy memories of her father" and "doesn't ever want to see him."  *Id.* at 25.  His younger daughter, who "had the best relationship" with plaintiff, also "begged the Court not to be forced to attend family therapy with their father and wishe[d] [that plaintiff] would move to Australia."  *Id.* at 25–26.  The family therapist further testified that "this is one of the most extreme cases of a family breakdown she has seen," that "the children and [p]laintiff need intensive preparation to be able to spend time together," and that "for now, it is very distressing for [the children] to think about having to see [plaintiff]."  *Id.* at 9, 22.  The court thus concluded that plaintiff's "three children want nothing to do with him," "feel he cheated on the entire family," and are "mad that he used them as a cover for his affair."  *Id.* at 8; *see also id.*

at 27.  While finding plaintiff's children and ex-wife to be credible, *id.* at 6, 26, the court found plaintiff not to be credible, observing that plaintiff "admitted that he lied during a deposition, was evasive at times, tried to hide, conceal or destroy evidence during discovery, did not have strong recall of the facts, and acknowledged that he had been lying to his wife, for about a decade, about his affairs," *id.* at 5.

On May 22, 2020, Simon, on plaintiff's behalf, filed a Motion to Alter or Amend Findings and Fact and/or for a New Trial and moved to withdraw as plaintiff's counsel.  *See* Def.'s Mot. to Dismiss, Ex. B, Order, *Kenny v. Knoll*, 2019 DRB 223 (D.C. Super. Ct. June 16, 2020) ("Alteration Order") at 1, ECF No. 5-4.  The court denied the Motion to Alter or Amend Findings and Fact and/or for a New Trial but granted Simon's motion to withdraw as counsel, finding that her withdrawal was in full compliance with D.C. Superior Court Domestic Relations Rule 101(c)(2).  *See id.* at 4–8.[2]

Now over two years later, plaintiff has sued Simon for legal malpractice, alleging $6 million in damages for "estrangement" from his three children and $2 million for "pain and suffering."  Compl. at 4.  Plaintiff alleges that Simon "fail[ed] to act as a 'zealous' advocate" for him and provides a long list of her alleged "failures," including her refusal to secure certain witnesses, to issue certain subpoenas, and to present certain documentary evidence, her failure to instruct plaintiff on how to make financial disclosures, her filing of an "unorthodox" motion to reconsider and decision not to file a different post-trial motion, and her withdrawal from representation.  *Id.* at 2–4.  Simon, in turn, moves to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[2]  In the same order, the Superior Court suspended plaintiff's visitation rights and held him in contempt for violating the Custody Order.  *See* Alteration Order at 8–9.

## II.     LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (citation omitted).  A claim is facially plausible when the plaintiff pleads factual content that is more than "'merely consistent with' a defendant's liability" and "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *see also Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) ("Plausibility requires more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

In deciding a motion under Rule 12(b)(6), a court must consider the whole complaint, accepting all factual allegations in the complaint as true, even if doubtful in fact, and construing all reasonable inferences in the plaintiff's favor.  *Twombly*, 550 U.S. at 555; *see also Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 210 (D.C. Cir. 2022).  A court, however, does not "accept inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (alterations in original accepted and citation omitted).  A *pro se* complaint, in addition, must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Bowman v. Iddon*, 848 F.3d 1034, 1039 (D.C. Cir. 2017) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  A *pro se* plaintiff is, nonetheless, not excused from complying with applicable procedural rules and "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678–79).

In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alterations in original accepted and citation omitted). A court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" and may do so "at any stage of the proceeding." Fed. R. Evid. 201(b)(2), (d). A court may thus take judicial notice of another court's proceedings and opinions. *See Dupree v. Jefferson*, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981) (taking judicial notice of record in "related proceedings in other courts"); *see also Donelson v. U.S. Bureau of Prisons*, 82 F. Supp. 3d 367, 371 (D.D.C. 2015) (cataloguing cases).

## III. DISCUSSION

Simon argues that the complaint should be dismissed because her alleged breach of duty as plaintiff's lawyer was not the proximate cause of his damages, and thus the complaint does not state a cause of action for legal malpractice.[3] *See* Def.'s Mem. at 8–18. This argument is correct.

To sustain a legal malpractice claim under D.C. law, a plaintiff must establish that "(1) the defendant was employed as the plaintiff's attorney, (2) the defendant breached a reasonable duty, and (3) that breach resulted in, and was the proximate cause of, the plaintiff's loss or damages." *Seed Co. v. Westerman, Hattori, Daniels & Adrian, LLP*, 961 F.3d 1190, 1196

---

[3] Simon also argues that plaintiff fails to state a claim for negligent infliction of emotional distress. *See* Def.'s Mem. at 19–20. Plaintiff affirmatively disavows pursuing a negligent infliction of emotional distress claim and thus any such claim need not be addressed. *See* Pl.'s Opp'n Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 6, ECF No. 11 ("In her Motion to Dismiss, Defendant characterizes Plaintiff's Complaint as one for negligent infliction of emotional distress, owing to the nature of the damages Plaintiff is asking for in his Complaint. However, Defendant [sic] is pursuing a claim for legal malpractice . . . . Thus, the requirements for pleading negligent infliction of emotional distress should not apply here.").

(D.C. Cir. 2020) (quoting *Martin v. Rossi*, 6 A.3d 860, 862 (D.C. 2010)); *see also Biomet Inc. v. Finnegan Henderson LLP*, 967 A.2d 662, 664 (D.C. 2009) (explaining that plaintiff bears the burden of establishing "the applicable standard of care, a breach of that standard, and a causal relationship between the violation and the harm complained of").[4]  Proximate causation requires a showing that "the injury was a foreseeable result of [the defendant's] alleged breach." *Seed Co.*, 961 F.3d at 1196; *see also Convit v. Wilson*, 980 A.2d 1104, 1125 (D.C. 2009) ("To establish proximate cause, the plaintiff must present evidence from which a reasonable juror could find that there was a direct and substantial causal relationship between the defendant's breach of the standard of care and the plaintiff's injuries and that the injuries were foreseeable." (citation omitted)).  Such showing can be made by illustrating that a plaintiff "could have 'fared better' in reaching the ultimate goal sought, or that there would have been a difference in the trial's outcome," but "more is required than speculation." *Chase v. Gilbert*, 499 A.2d 1203, 1212 (D.C. 1985) (citations omitted); *see also Steele v. Salb*, 93 A.3d 1277, 1281 (D.C. 2014) (explaining that proximate causation in the legal malpractice context often involves "determin[ing] whether the plaintiff would have prevailed in the underlying litigation in the absence of the attorney's alleged breach").

Here, during plaintiff's divorce proceedings, Simon and plaintiff had an attorney-client relationship, and Simon owed a duty to plaintiff based on this relationship to work in the latter's interest using a reasonable degree of knowledge, care, and skill.  *See Chase*, 499 A.2d at 1211; *see also Morrison v. MacNamara*, 407 A.2d 555, 561 (D.C. 1979) ("[A] lawyer must exercise

---

[4] "A federal court sitting in diversity must apply the choice-of-law rules of the forum state—here, the District of Columbia." *In re APA Assessment Fee Litig.*, 766 F.3d 39, 51 (D.C. Cir. 2014).  The District of Columbia employs "a modified governmental interests analysis which seeks to identify the jurisdiction with the most significant relationship to the dispute." *Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168, 180 (D.C. 2006).  The parties agree that D.C. law applies to this case concerning defendant's representation of plaintiff in divorce proceedings in a local D.C. court.  *See* Def.'s Mem. at 8; Pl.'s Opp'n at 2–3.

that degree of reasonable care and skill expected of lawyers acting under similar circumstances."). Plaintiff argues that Simon breached this duty when she allowed a paralegal to work on his case, over plaintiff's objections, and when Simon refused to secure witnesses, file motions to compel on subpoenas, respond to communications regarding evidence, and present evidence of his ex-wife's alleged criminal activity and physical evidence to impeach her. *See* Compl. at 2–3; Pl.'s Opp'n Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 3, ECF No. 11. These facts, "taken together," plaintiff contends, are "likely to have resulted in a less favorable outcome for [p]laintiff at his divorce trial than would have resulted had [d]efendant not engaged in these actions or inactions," resulting in his estrangement from his children and general pain and suffering. Pl.'s Opp'n at 3; *see also id.* at 4 ("[H]er negligent representation of his matter likely contributed to the outcome of his case."); Compl. at 3.

Assuming *arguendo* that Simon breached her duty of care to plaintiff, plaintiff has still failed to state a cognizable claim for legal malpractice because he has not established that any such breach was the proximate cause of his injury or damages; that is, he has not alleged "sufficient facts showing causation or resulting non-speculative harm from [Simon's] breach of [her] professional duty." *Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697, 713 (D.C. 2013). At the outset, courts "have declined to find proximate cause" where they would "have to speculate about a legal result." *Id.* at 710; *see also Chase*, 499 A.2d at 1212 (explaining that questions like "[w]hat [an individual] might have done" or "what the result would have been" "involves the kind of speculation [that] courts have rejected as grounds for holding that an attorney has been negligent in performing his duty to his client"). Here, plaintiff merely lists, in vague and general terms, perceived failures by Simon and provides no information as to how these alleged failures affected the outcome of his case. He does not

7

identify, for example, what the extra fact or expert witnesses would have testified to, what specific evidence should have been adduced, and how any of this information would have resulted in a different trial outcome. *See Bigelow v. Knight*, 737 F. Supp. 669, 671 (D.D.C. 1990) (concluding that plaintiff, who alleged "only vague and general failures of the defendant to locate and interview witnesses who would have rendered suitable support for a defense," failed to state a legal malpractice claim because he did not "identify what these witnesses would have testified to and how they would have supported a defense").

Further, plaintiff does not explain how the motion for reconsideration Simon filed on his behalf was "unorthodox" or how this purported unorthodoxy was related to the court's denial of the motion. *See* Compl. at 4. He provides no details on Simon's alleged conflict of interests and states only in conclusory terms that Simon disclosed confidential information. *Id.* at 2, 4. He also fails to describe how he was harmed by Simon's withdrawal as his attorney, after she represented him in trial, filed post-trial motions on his behalf, responded to all of his ex-wife's post-trial motions, and was found to have withdrawn in full compliance with D.C. Superior Court Domestic Relations Rule 101(c)(2). *See id.* at 4; Alteration Order at 4–5; *see also Guo Wengui v. Clark Hill, PLC*, 440 F. Supp. 3d 30, 41 (D.D.C. 2020) (rejecting legal malpractice claim where defendant was justified in seeking to withdraw and the withdrawal did not result in non-speculative or non-nominal injuries). In sum, plaintiff fails to explain how any of Simon's alleged breaches of duty was the proximate cause of the result in his divorce proceedings.

This conclusion is bolstered by the Superior Court's two thoroughly reasoned decisions, of which this Court takes judicial notice. These decisions make clear that any estrangement from his children existed long before plaintiff was represented by Simon and suggest that Simon could have done little in terms of trial strategy to change the result of the divorce proceedings. Put

8

differently, plaintiff's alleged harms of "estrangement" and "pain and suffering" are not the proximate cause of Simon's alleged negligent representation. In its decision to grant plaintiff's ex-wife sole physical custody of their three children, the Superior Court reasoned that "[plaintiff's ex-wife] is a fit and proper person to parent, she has always been the primary caregiver and decision maker, this arrangement is consistent with the credited stated wishes of the minor children, and [p]laintiff consents to this arrangement." Custody Order at 41. In contrast, the court explained that plaintiff "admitted that he lied during a deposition, was evasive at times, tried to hide, conceal or destroy evidence during discovery, did not have strong recall of the facts, and acknowledged that he had been lying to his wife, for about a decade, about his affairs." *Id.* at 6. Throughout the opinion, the court repeatedly noted that the children wanted to "sever ties with their father and cut him out of their lives" but ultimately concluded that plaintiff may have contact with his children in a therapeutic setting because the children "owe it to themselves to try to have a relationship with" their father. *Id.* at 42; *see also id.* at 28 (explaining that plaintiff "acknowledges that his children do not want to see him"), 29 ("The minor children would be unfairly and unjustly traumatized if they were compelled by this Court to spend time with their father outside a therapeutic setting."). In fact, the court specifically found that plaintiff "alone is responsible for the distressing demise of his relationships with his children." *Id.* at 9; *see also id.* at 46 (similar).[5] In deciding to suspend plaintiff's visitation rights, the Superior

---

[5] Simon argues that issue preclusion "prevent[s] Kenny from re-raising and relitigating claims for his alleged emotional distress and parental estrangement here under the guise of a legal malpractice claim" because the Superior Court, in its Custody Order, concluded that plaintiff "*alone* is responsible for the distressing demise of his relationships with his children." Def.'s Mem. at 22–23 (quoting Custody Order at 9). Under the principle of issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Klayman v. Rao*, 49 F.4th 550, 553 (D.C. Cir. 2022) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)); *see also Consol. Edison Co. of N.Y. v. Brodman*, 449 F.3d 1254, 1257 (D.C. Cir. 2006) ("[I]ssue preclusion analysis requires comparing the issues actually litigated and determined in an earlier lawsuit with the issues that the Claimants seek to litigate in their complaint [in the new lawsuit]."). Issue preclusion, however, does not bar plaintiff's legal malpractice claim. The language relied upon from the Superior Court's Custody Order that assigns responsibility to plaintiff for his poor

Court further explained that plaintiff violated the Custody Order multiple times by repeatedly sending email, voice, text, Facebook, and Twitter messages to his minor children and threatening his wife if she did not "grant him a 50/50 split of marital assets and far more custodial rights," resulting in his ex-wife obtaining a temporary protection order against him.  Alteration Order at 2.  In light of the Superior Court's decisions—which spotlight the three children's testimony that they wanted nothing to do with plaintiff, plaintiff's history of poorly treating his children, his own testimony admitting to much of the abusive conduct, his evasiveness and lack of credibility, and his refusal to abide by a court order—plaintiff offers no convincing reason why Simon's alleged negligent representation affected the outcome of the divorce proceedings or was otherwise the proximate cause of his alleged harms of estrangement from his children and pain and suffering.

Finally, plaintiff requests an opportunity to amend his complaint if the Court concludes that he has failed to state a legal malpractice claim.  *See* Pl.'s Opp'n at 4–5.  The problem with this request is that he has missed his 21-day window to amend his complaint as of right.  *See* Fed. R. Civ. P. 15(a)(1).  To be sure, courts "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), but "Rule 15(a)—even as liberally construed—applies only when the plaintiff actually has moved for leave to amend the complaint; absent a motion, there is nothing to be freely given," *Schmidt v. United States*, 749 F.3d 1064, 1069 (D.C. Cir. 2014) (quoting

---

relationship with his children is considering plaintiff's argument that his ex-wife "alienate[d] the children" from him. Custody Order at 9; *see also id.* at 46 ("[Kenny] alone is responsible for the estrangement of the parties by engaging in affairs and a secret life without regard to the feelings of his wife and three children.").  This conclusion was a factor in the court's decision to grant plaintiff's ex-wife custody of their children and to award her a larger proportion of marital assets. *See id.* at 9, 43–49.  That is a wholly different context than this legal malpractice matter, in which plaintiff alleges that Simon's negligence led to a bad outcome in his divorce proceedings, which further alienated his children.  This issue was not "actually litigated" in the divorce proceedings. *See Bobby v. Bies*, 556 U.S. 825, 834 (2009); *see also Arizona v. California*, 530 U.S. 392, 415 (2000) (explaining that issue preclusion applies to only matters that were "actually presented and determined in an earlier suit" (quoting *United States v. Int'l Bldg. Co.*, 345 U.S. 502, 505–06 (1953))); *NextWave Pers. Commc'ns, Inc. v. Fed. Commc'ns Comm'n*, 254 F.3d 130, 147 (D.C. Cir. 2001) ("If the 'basis' of a prior decision is 'unclear, and it is thus uncertain whether the issue was actually and necessarily decided in the prior litigation, then relitigation of the issue is not precluded.'" (alteration in original accepted) (quoting *Connors v. Tanoma Mining Co.*, 953 F.2d 682, 684 (D.C. Cir. 1992))).

*Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006)).  Plaintiff's legal malpractice claim is thus dismissed.

## IV. CONCLUSION & ORDER

For the foregoing reasons, it is hereby:

**ORDERED** that defendant's Motion to Dismiss, ECF No. 5, is **GRANTED**; and it is further

**ORDERED** that plaintiff's complaint is **DISMISSED** for failure to state a claim; and it is further

**ORDERED** that the Clerk of the Court shall close this case.

**SO ORDERED.**

*This is a final and appealable order.*

Date:  October 20, 2023

_____
                          **BERYL A. HOWELL**
                          United States District Judge